**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 25-203-DLB**

**KELLY BROOKBANK**                                                                              **PLAINTIFF**

**v.**                                   **MEMORANDUM OPINION AND ORDER**

**HEIGHTS FINANCE CORPORATION**                                            **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

## I.      INTRODUCTION

This matter is before the Court upon the Motion to Compel Arbitration by Defendant Heights Finance Corporation ("Heights").  (Doc. # 5).  *Pro se* Plaintiff Kelly Brookbank having filed her Response in Opposition (Doc. # 8) and Heights having filed its Reply (Doc. # 11), the Motion is now ripe for the Court's review.  For the following reasons, the Motion is **granted**.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

This matter involves a series of contracts between Plaintiff Kelly Brookbank and Defendant Heights Finance Corporation.  Brookbank is a citizen of Campbell County, Kentucky.  (Doc. # 1-1 ¶ 1).  Heights is an Illinois corporation with its principal place of business in Greenville, South Carolina.  (Doc. # 1 ¶ 12).  Heights' regular business practice consists of financing products for customers through loans, extensions, and refinancing of credit.  (Doc. # 5-1 ¶¶ 5–6).

From April 2020 to October 2022, Brookbank obtained financing from Heights through four separate loans, each requiring her to enter a contract with Heights.  (*See*

1

Doc. # 5-1 at 7–26).  Each contract contained an arbitration agreement clause as part of

the loan agreement.  (*Id*. at 10–11, 15–16, 20–21, 25–26).  The same agreement clause

is found in each of the parties' four contracts.  In relevant part, the arbitration agreement

clause reads:

> **Read this Arbitration Agreement carefully as the Arbitration Agreement applies to the undersigned Borrower(s) ("I", "me" and "my") and Heights Finance Corporation ("you" and "your"). The Arbitration Agreement will have a substantial impact on the way you and I resolve any dispute which you or I have against each other now or in the future, if I do not reject it. You and I agree to this Arbitration Agreement. Instead of litigation in a court, if any Dispute (as defined below in the section captioned "Types of Claims Covered") arises between the parties, you and I will resolve the Dispute by binding arbitration if either party elects arbitration. IF YOU OR I ELECT TO ARBITRATE A DISPUTE, YOU AND I WILL NOT HAVE THE RIGHT TO PURSUE THAT DISPUTE IN COURT OR HAVE A JURY DECIDE THE DISPUTE. ALSO, YOUR AND MY ABILITY TO OBTAIN INFORMATION FROM THE OTHER PARTY IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU OR I WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

(*Id*. (emphasis in original)).

The contract further provides that the kinds of "disputes" covered by the arbitration

agreement.  The coverage portion reads as follows:

> "Dispute" shall have the broadest meaning possible. It includes any claim, dispute, or controversy between me (which shall include any co-signers under this Note) and you that in any way arises from or relates to the loan, the Collateral, this Note, or the relationships resulting from any of the foregoing. This includes disputes arising from actions or omissions on or prior to the date of this Note. . . . Dispute includes initial claims, counterclaims, crossclaims, and third-party claims. It includes disputes based upon contract, negligence, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law, and equity (including any claim for injunctive or declaratory relief). "Dispute" does not include disputes about the validity, enforceability, coverage, or scope of this Arbitration Agreement or any part thereof (including without limitation, this sentence, the section captioned "class Action Waiver," or the last sentence of the section captioned "Severability"); all such disputes are for the court and not an arbitrator to decide. However, any dispute or argument that

2

concerns the validity or enforceability of the Note as a whole is for the arbitrator, not a court, to decide.

(*Id.*).

The contract also contains clauses about which organization will oversee the arbitration, the costs and location of arbitration, the right to appeal the arbitration decision, and the binding effect of the arbitration agreement.  (*Id.*).  Finally, the contract provides a paragraph on the protocols for opting out of the arbitration agreement, which requires the party opting out to send a written notice via certified mail to Heights's Legal Department in Peoria, Illinois.  (*Id.*).

Directly below the arbitration agreement in each contract is the place for the parties to sign the contract.  Before the signature lines is a paragraph that reads "I have read this document and by signing below I agree to the terms and conditions set forth pages 1, 2, 3, 4 and 5 of this document and acknowledge receipt of a completed copy of this document . . . on the date stated above."  (*Id.*).  Brookbank's signature, either as a wet signature or e-signature, appears on the final page of each contract.  (*Id.* at 11, 16, 21, 26).  Heights claims Brookbank never sent notice of her intent to opt out of the arbitration agreement.  (Doc. # 5-1 ¶ 11).

Brookbank brought this lawsuit in Campbell County Circuit Court on October 24, 2025. (Doc. # 1-1).  In her Complaint, she brings six claims for relief for fraudulent lending practices, breach of contract, misrepresentation, violations of the Fair Credit Reporting Act, violations of the Kentucky Consumer Protection Act and compensatory and punitive damages, totaling over $84,000.00 in damages.  (*Id.* at 5–6).  Heights removed the case to this Court on December 1, 2025.  (Doc. # 1).  A week later, Heights filed this Motion to Compel Arbitration pursuant to Sections 2, 3 and 4 of the Federal Arbitration Act.  (Doc.

# 5).  Brookbank having filed her Response in Opposition (Doc. # 8) and Heights having filed its Reply (Doc. # 11), the matter is now ripe for the Court's review.

## III.    ANALYSIS

The Federal Arbitration Act ("FAA") governs arbitration agreements, including in the employment context.  9 U.S.C. § 1 *et seq.*; *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009).  Through the FAA, Congress has established an "'emphatic federal policy in favor of arbitral dispute resolution.'"  *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 389 (6th Cir. 2018) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011)).  The FAA provides that written agreements to submit an existing controversy arising out of contract or transaction to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "'[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Atkins*, 724 F. App'x at 1001 (quoting *Cocchi*, 565 U.S. at 21–22).

### A.    Enforceability of the Agreement

Before deciding whether to compel arbitration, the Court must address Brookbank's primary contention—whether the arbitration agreement in the contract is enforceable.[1]  (Doc. # 8 at 1).  Brookbank claims that Heights relied on an arbitration clause that she never signed.  (*Id.*).  She contends that she never signed, initialed, or otherwise indicated that she assented to the arbitration agreement, and as such, there is

---

[1]    The Court will apply a more liberal standard when evaluating Brookbank's *pro se* pleadings.  *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).

no valid written agreement between the parties such that the FAA's policies can govern. (*Id.*; *see also* Doc. # 10).

The underlying decision of whether the parties agreed to arbitrate is a decision that lays with the courts, not the arbitrator. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). Further, "because arbitration agreements are fundamentally contracts," courts review the enforceability of an arbitration agreement according to the applicable state law of contract formation. *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)). "Before examining the merits of an arbitration agreement, a court must first determine the validity of that agreement as a threshold matter." *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 905 (Ky. 2013). The party seeking to enforce the arbitration agreement has the burden of proving the agreement exists, and once they have shown its existence, the burden shifts to the party seeking to avoid the agreement. *Louisville Peterbilt, Inc. v. Cox*, 392 S.W.3d 850, 857 (Ky. 2004). One may show the existence of an arbitration agreement by "providing copies of [a] written and signed agreement[ ] to arbitrate." *Id.* Once that initial showing is made, the party seeking to avoid arbitration must prove that there is no arbitration agreement, which the Kentucky Supreme Court describes as "a heavy burden." *Id.*

In Kentucky, "[i]t is settled law . . . that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud." *Hathaway v. Eckerle*, 336 S.W.3d 83, 90–91 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959)).

"Arbitration agreements are 'on an equal footing with other contracts' and may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322, 327 (6th Cir. 2025) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  As with other contracts, an unconscionable arbitration agreement is unenforceable.  *Id*.  Accordingly, courts are directed to look to "ordinary state-law principles that govern the formation of contracts" to determine whether an arbitration agreement is valid.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003).

On review, it is clear that Brookbank and Heights entered four contracts with valid arbitration provisions.  To start, Heights met its burden of proof.  All four contracts are signed by both Brookbank and a witness.  (Doc. # 5-1 at 10–11, 15–16, 20–21, 25–26).  By signing all four contracts, Brookbank is presumed to have known the contracts' contents, notably that each one contained an arbitration clause.  *Hathaway*, 336 S.W.3d at 90–91.  Further, by signing each one, Brookbank bound herself to the contracts' provisions, including arbitration of any claims.  *Id*.  These contracts and the presumptions they create make it impossible for Brookbank to satisfy her burden that the arbitration agreement does not exist.

Brookbank does not specifically allege that Heights procured the contracts and arbitration agreements through fraud or duress.  She also does not directly allege that the contracts are unconscionable.  Brookbank does, however, allege that "any arbitration document produced by Defendant was not executed by [her] and was not part of the agreement [she] accepted" and that "[she] would not have knowingly waived [her] right to

6

a court proceeding without clear disclosure and [her] express written consent." (Doc. # 10). Construing Brookbank's *pro se* allegations liberally, the Court will conduct a brief analysis on whether the contract between Brookbank and Heights was unconscionable under Kentucky law.[2]

Kentucky law defines an unconscionable contract as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. Ct. App. 2001). Kentucky courts conduct a two-step analysis of whether an arbitration clause is unconscionable. *Schnuerle v. Insight Communications Co.*, 376 S.W.3d 561, 575 (Ky. 2012). The first step requires courts to look at the procedures by which the arbitration clause was made, thereby looking at whether the agreement is procedurally unconscionable. *Id*. at 576. The second step requires analysis of the content of the arbitration clause and whether it is substantively unconscionable. *Id*.

An arbitration agreement is considered procedurally unconscionable when the process by which an agreement is reached or a contract is formed is unfavorable to one party. *Conseco*, 47 S.W.3d at 343 n.22. The use of fine print and convoluted or unclear language are examples of how an agreement can be procedurally unconscionable. *Id*. (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). Some relevant factors in determining whether an arbitration agreement is procedurally unconscionable include "the bargaining power of the parties, 'the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice.'" *Schnuerle*, 376 S.W.3d at 576 (quoting

---

[2]    Even viewing Brookbank's pleadings liberally, the Court cannot find any cognizable allegations of fraud or duress in the entering of the financing contracts.

*Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 875–76 (11th Cir. 2005)).

Here, the Court finds no signs that the arbitration agreements were procedurally unconscionable.   The agreements of each contract are written in plain English with enough detail to clearly outline the arbitration process and each party's rights in the arbitration process.   (*See* Doc. # 5-1 at 10–11, 15–16, 20–21, 25–26).   Indeed, the arbitration clauses clearly outline the impact of agreeing to arbitrate, the kinds of claims that can be covered in arbitration, and most importantly, the right of Brookbank to reject the arbitration portion of the contract.   (*Id*.).   These provisions are all written in language that is "understandable by an adult of ordinary experience and intelligence."   *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013).   Further, in each contract, the arbitration agreement is located directly above the signature lines on the fourth and fifth pages of each contract, not amidst pages of impossible-to-understand text meant to confuse signees like Brookbank.   (Doc. # 5-1 at 10–11, 15–16, 20–21, 25–26).   Accordingly, in keeping with Kentucky law, the Court finds that the arbitration clauses are not procedurally unconscionable.   *Peay*, 406 S.W.3d at 835–36.

An arbitration agreement is substantively unconscionable when there are "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."   *Conseco*, 47 S.W.3d at 343 n.22.   When assessing substantive unconscionability, courts look to "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns."   *Schnuerle*, 376 S.W.3d at 577 (quoting *Jenkins*, 400 F.3d at 876)).   Further, the Supreme Court of Kentucky concluded that

arbitration agreements do not require any mutuality of obligation between the parties. *Green v. Frazier*, 655 S.W.3d 340, 348 (Ky. 2022) (citing *Grimes v. GHSW Enterprises, LLC*, 556 S.W.3d 576, 582–583 (Ky. 2018)).

The Court concludes that these agreements are not substantively unconscionable. The clauses' terms do not favor one side over the other. Either side can compel arbitration if they have a claim relating to the agreements between Brookbank and Heights. Indeed, this is "a basic arbitration clause permitting either side to compel arbitration" that the Supreme Court of Kentucky has ruled is not substantively unconscionable. *Schnuerle*, 376 S.W.3d at 577. Accordingly, the Court finds the contracts containing the arbitration agreements are valid under Kentucky law.

### B.    Heights's Ability to Enforce the Contract

When a dispute arises under § 4 of the FAA, a court must analyze four issues relating to the arbitration agreement. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). First, it should determine whether the parties agreed to arbitrate. *Id*. Second, the court must determine the scope of the arbitration agreement. *Id*. Third, if there are federal statutory claims asserted, the court must consider whether Congress intended those claims to be nonarbitrable. *Id*. Finally, if they conclude some claims are subject to arbitration, the court must determine whether to stay the remainder of the proceedings pending arbitration. *Id*. The party opposing arbitration must show "a genuine issue of material fact as to the validity of the agreement to arbitrate—a showing that mirrors the summary judgment standard" under Fed. R. Civ. P. 56(c). *Yates v. Royal Consumer Prod., LLC*, No. 3:22-CV-075-CHB, 2022 WL 3365075, at *2 (W.D. Ky. Aug. 15, 2022).

9

In conducting this analysis, the court must draw all reasonable inferences in favor of the party opposing arbitration.  *Id*.

First, the parties agreed to arbitrate by signing the contracts.  As discussed *supra*, by signing, Brookbank assented to all the terms of the contract, including the arbitration agreement.  Her argument that she did not sign the arbitration agreement directly is unavailing.  In fact, Brookbank agrees she entered into the contracts with Heights which contain the agreement to arbitrate.  (Doc. # 10).  Under Kentucky law, she agreed to arbitrate any claim relating to her contracts with Heights.  *See Hathaway*, 336 S.W.3d at 90–91.

Next, the arbitration agreement is broad enough to cover all of Brookbank's claims in this matter.  Indeed, the arbitration agreement covers any Dispute raised by either party. (Doc. # 5-1 at 10–11, 15–16, 20–21, 25–26).  The contract defines a "Dispute" as "any claim, dispute, or controversy between [the parties] that in any way arises from or relates to" the agreement between the parties, which the contract describes as "hav[ing] the broadest meaning possible."  (*Id*.).  It follows that Brookbank's claims—all of which stem from her contracts with Heights—fall under the ambit of arbitration outlined by the contracts.  (*See* Doc. # 1-1 at 5–6).

Third, Brookbank's claims are arbitrable.  Brookbank alleges one federal claim against Heights—violation of the Fair Credit Report Act ("FCRA"), 15 U.S.C. § 1681, for reporting "inaccurate, delinquent information to credit bureaus over three years" and "continu[ing] to report inaccurate monthly balances, severely affecting [Brookbank's] credit." (*Id*. at 6).  Having reviewed the statutory text, the Court finds no direct bar on the arbitration of FCRA claims.  Courts across the country, including in this district and in the

10

Sixth Circuit, have found that arbitration is an appropriate arena to decide FCRA claims. *See Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1065 (E.D. Ky. 2015); *see also McMahan v. Byrider Sales of Indiana S, LLC*, No. 3:17-CV-00064-GNS, 2017 WL 4077013, at *4 (W.D. Ky. Sept. 14, 2017); *Mason v. Verizon Wireless Servs., LLC*, 806 F. Supp. 3d 703, 710 (N.D. Ohio 2025); *Burton v. Equifax Info. Servs., LLC*, No. 121CV00233DCLCSKL, 2021 WL 5500773, at *3 (E.D. Tenn. Nov. 22, 2021).  This Court follows suit and finds that Brookbank's FCRA claims are arbitrable.  Furthermore, the Court finds that Brookbank's Kentucky state law claims are arbitrable.  There is nothing in the Kentucky Uniform Commercial Code ("UCC") that indicates claims brought under it are not arbitrable.  *See Whalen v. Lord & Moses, LLC*, No. CIV. A. 09-192-JBC, 2009 WL 3766327, *3 (E.D. Ky. Nov. 10, 2009).; *Johnson v. HCL Am., Inc.*, No. 5:24-CV-000380-GFVT, 2025 WL 3252399, at *6 (E.D. Ky. Nov. 18, 2025).

Finally, the Court will stay these proceedings until the claims have been fully arbitrated.  The Supreme Court has concluded that district courts may not dismiss an action where all claims in the action are subject to arbitration.  *See Smith v. Spizzirri*, 601 U.S. 472, 477 (2024).  Accordingly, these proceedings will be stayed in this Court until a final decision is reached in arbitration.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)    Defendant Heights's Motion to Compel Arbitration (Doc. # 5) is **GRANTED**;

(2)    These proceedings are **STAYED**, pending the outcome of the parties' arbitration.

This 1st day of May, 2026.



Signed By:

**David L. Bunning** $\mathcal{DB}$

**Chief United States District Judge**

G:Judge-DLB\DATA\ORDERS\Cov2025\25-203 Order Granting MTC.docx